STATE OF VERMONT

ENVIRONMENTAL COURT

|  |  |  |
|---|---|---|
| | } | |
| City of Burlington, | } | |
| Plaintiff, | } | |
| | } | |
| v. | } | Docket No. 29-2-09 Vtec |
| | } | |
| Leon Beliveau, | } | |
| Defendant. | } | |
| | } | |
| | } | |
| In re Beliveau Notice of Violation | } | Docket No. 274-12-07 Vtec |
| (Appeal of Beliveau) | } | |
| | } | |

Decision and Order

In Docket No. 274-11-07 Vtec, Leon L. Beliveau appealed from a decision of the Development Review Board (DRB) of the City of Burlington, upholding a Notice of Violation for the use of the parking area and driveway at 52-54 Hickok Place. In Docket No. 29-2-09 Vtec, the City brought an enforcement action against Mr. Beliveau, seeking injunctive relief and a penalty for the violations. The City is represented by Kimberly J. Sturtevant, Esq.; Defendant-Appellant Leon L. Beliveau (Defendant) has appeared and represents himself.

In Docket No. 274-11-07 Vtec, the Court resolved various motions in a Decision and Order issued on September 12, 2008, leaving Questions 1, 2, and 4 of the Original Statement of Questions and Question 6 of the Additional Statement of Questions for

1

trial.[1] In re: Beliveau Notice of Violation, No. 274-12-07 Vtec, slip op. at 4 (Vt. Envtl. Ct. Sept. 12, 2008) (Wright, J.). The merits hearing for that appeal was delayed, by agreement of the parties, to allow it to be consolidated with the enforcement case filed in February 2009 as Docket No. 29-2-09 Vtec.[2]

After resolving additional motions in the enforcement action, the two consolidated cases proceeded to trial before Merideth Wright, Environmental Judge. The parties were given the opportunity to submit written memoranda and requests for findings. Upon consideration of the evidence and of the written memoranda and requests for findings filed by the parties, the Court finds and concludes as follows.

Defendant owns property located at 52-54 Hickok Place (the subject property) in a Medium Density Residential zoning district in the City of Burlington.[3] The property contains a duplex residential building rented out to tenants. Defendant testified that he acquired the subject property in 1986 and created the parking area in the rear of the property in 1987.[4] Defendant also owns an adjacent residential building on Greene Street, as well as the adjacent residential building at 56 Hickok Place, both of which are

---

[1] Defendant's initial statement of questions, filed when he was represented by counsel, contained four questions; a second statement of questions submitted by Defendant contained six additional questions.

[2] Defendant filed an answer and also later filed a document denominated as a "counterclaim," asserting, among other things, that he did not personally commit any "illegal acts" on the premises, but that tenants residing at the subject property caused any inconsistencies with the site plan or zoning ordinance. The "counterclaim" asked the Court to enjoin the City's enforcement action. This decision addresses the issues raised in the "counterclaim" as well as any affirmative defenses raised in Defendant's answer.

[3] Facts and legal conclusions stated in the September 12, 2008 Decision and Order will be restated in this decision only as necessary. A diagram of the property has been provided to orient the reader to the features of the property referred to in this decision.

[4] No zoning permit or site plan was submitted in evidence regarding the creation of this parking area or showing what the preexisting parking was at the property as of Defendant's purchase of it.

also rented out to tenants.

In 1996, Defendant applied for and received a Zoning Permit and Certificate of Appropriateness (COA), issued on a single form as Zoning Permit # 97-228 and as COA #097-005A (the 1999 Zoning Permit/COA), to replace the duplex's "existing two[-]story rear porch" with new construction. Defendant's application described the proposed work and, in the spaces on the application for filling in the number of parking spaces, showed "10" as existing, "10" as proposed, and "5±" as required. Defendant's application included a hand-drawn site plan, and a set of elevations of the proposed new stairs and porch. Only the elevations, not the site plan, were stamped as receiving final approval in connection with the 1996 Zoning Permit/COA. The 1996 Zoning Permit/COA stated the required number of parking spaces as "4," but did not state a number for "existing parking spaces" and did not show any parking spaces on the associated hand-drawn site plan. The sole specific permit condition (other than a set of fourteen "standard" permit conditions) was that:

> The stairs, railing and support structure shall be painted or stained to match the trim on the duplex within six (6) months of their installation, or this permit shall be null and void.

Sometime prior to May of 1999, Defendant removed an existing small accessory structure from the northwest corner of the property; the structure had been labeled as "barn[/]garage," with a footprint of "10 x 20" feet, on the 1996 site plan. In September of 1999 the Zoning Enforcement/Compliance Officer sent Defendant a Notice of Violation, alleging that he had removed a garage, increased the parking area, and installed a fence on the subject property without first obtaining a zoning permit for the work.[5] Defendant did not appeal the 1999 Notice of Violation, and it became final. 24 V.S.A. § 4472(d).

---

[5] At a subsequent site visit with Defendant on September 15, 1999, the Zoning Enforcement/Compliance Officer withdrew the allegations of the Notice of Violation regarding the fence installation; it is not at issue in the present cases.

3

Instead, on October 13, 1999, Defendant filed an application for a new Zoning Permit and Certificate of Appropriateness. The 1999 application sought approval to "remove 10 x 20 garage, return area to green space, lay down railroad tie to prevent tenants from driving onto new green space." It included a photocopy of the 1996 site plan, with railroad ties drawn in at the edges of the parking and driving areas, from the northwest corner at the head of the driveway to the southeast corner of the east parking area (near the northeast corner of the house). The site plan submitted with the 1999 application (1999 Site Plan) did not show railroad ties along the back (north) of the house, and did not show a walkway along the west side of the house or any railroad ties between the fourteen-foot-wide driveway and the west side of the house.

The 1999 Site Plan was stamped and signed as receiving final approval on October 18, 1999; it shows that the property is 50 feet in width. City's Exh. 5. It shows a walkway or stairs from the rear of the building out to the driveway, but does not show a walkway along the east side of the driveway, running along the west side of the house. The driveway and parking areas are shown as three contiguous areas on the coverage calculations: 90' x 14', 27' x 34', and 20' x 20' in size (see attached diagram); these contiguous areas include the parking areas, any area necessary for maneuvering cars into and out of the parking areas, the portion of the driveway next to the house, and the portion of the driveway extending beyond the house to the north.[6] The actual placement of any existing or proposed parking spaces is not shown on the approved site plan. No pedestrian walkway is shown on the approved site plan.

The dimensional requirements for a head-on (90°) parking space under both the

---

[6] This decision will refer to the 90' x 14' area as the driveway, to the 20' x 20' area as the north parking area, and to the easterly portion of the 27' x 34' area (approximately sixteen to eighteen feet in depth) as the east parking area.

4

1993 Zoning Ordinance and the 2005 Zoning Ordinance[7] is nine feet in width and twenty feet in length for a standard car and eight feet in width and eighteen feet in length for a compact car. 1993 & 2005 Zoning Ordinances § 10.1.10 & Table 10-C. The 2005 Zoning Ordinance allows the front two feet of a space heading into a setback to extend into the setback, reducing the parking space length accordingly. 2005 Zoning Ordinance § 10.1.10 & Table 10-C. The 1993 Zoning Ordinance exempted existing structures and land uses from the parking requirements "so long as the kind or extent" of the use is not changed, 1993 Zoning Ordinance § 10.1.4; the 2005 Zoning Ordinance continued the exemption for existing structures unless there is a change in the structure or the use that "increases the parking requirements." 2005 Zoning Ordinance § 10.1.4. Section 10.1.16 of both ordinances prohibits tandem parking spaces (one behind the other requiring moving a vehicle to reach the space), except that the restriction does not apply to single detached dwellings or to duplexes.

Zoning Permit No. 00-209 and Certificate of Appropriateness No. 97-005B (the 1999 Zoning Permit/COA) were issued on a single form on October 18, 1999, by the Zoning Administrator and Planning Director, respectively. The project description reads as follows:

> Removal of the detached single bay, single story garage in the rear yard of the existing duplex. Area to be returned to green space. No changes to the existing parking area.

The lot coverage due to the removal of the garage building was reduced from 72% to 69%, which is less nonconforming than prior to the removal of the building. The existing, proposed, and required numbers of parking spaces for the property are all

---

[7]   The zoning ordinance provided in evidence as City's Exhibit 1 is the 2005 Zoning Ordinance, as amended through 2006, in effect as of the date of the 2007 Notice of Violation. The 1993 Zoning Ordinance in effect at the time that both the 1996 and the 1999 Zoning Permit/COA were issued was provided in connection with the City's August 28, 2008 responses to Appellant-Defendant's motion for summary judgment.

stated on the permit as "4," even though Defendant's application left those entries blank, and the 1996 Zoning Permit/COA had only stated the "required" parking as four spaces and made no representation or condition regarding the existing parking. The sole specific permit condition of the 1999 Zoning Permit/COA (other than a set of fourteen "standard" permit conditions) was that:

> The existing parking area as defined on the approved site plan shall be defined with timber curbs (minimum of two 6"x 6", stacked and spiked into the ground) within thirty (30) days of issuance of this zoning permit, or this permit is null & void.

Nothing in the approved site plan provided in evidence as City's Exhibit 5 showed a walkway between the driveway and the house, or required timber curbing between the driveway and the house. Nothing in the approved site plan showed the locations of any existing or proposed parking spaces. Nothing in the approved site plan or the zoning permit conditions prohibited tandem parking in the driveway or prohibited parking in any specific portion of the "existing" parking areas.

Defendant signed at the bottom of the permit. Standard Condition 7 states that the permittee is solely responsible for completing all improvements shown on approved plans and that, by accepting the permit, the permittee "agrees to maintain all improvements in a satisfactory condition." Defendant did not appeal the 1999 Zoning Permit/COA, and it became final. 24 V.S.A. § 4472(d) (stating that upon "failure of any interested person to appeal" a municipal decision or order, "all interested persons affected shall be bound by that decision or act . . . and shall not thereafter contest [it], either directly or indirectly"). That is, even though the preexisting use of that corner garage had been for parking, the 1999 Zoning Permit/COA required its replacement with open space, and that requirement cannot now be challenged.

On October 9, 2002, Defendant applied for a Certificate of Occupancy for the subject property, including his certification that the project is in compliance with the "setbacks and dimensional requirements indicated on [the] approved site plan . . . dated

6

10/18/99," and that "all conditions of approval or findings of facts" have been met. The Certificate of Occupancy was issued on October 23, 2002, based on that certification.

Between the issuance of the 1999 Zoning Permit/COA and May of 2007, no City representative contacted Defendant regarding violations of the 1999 Zoning Permit/COA.

As of May 29, 2007, when the Zoning Enforcement Officer took the photographs in evidence as City's Exhibit 9, Defendant had not fully installed the required railroad ties according to the 1999 Site Plan. The area in the northwest corner of the property formerly occupied by the 10' x 20' removed garage remained available for parking and was not set off by railroad ties or seeded with grass. The north and east sides of the north parking area were surrounded by a single layer of railroad ties, placed by Defendant in 1999. The north parking area was wider than the twenty feet shown on the 1999 Site Plan, and appeared to have room for three cars (not including the northwest corner space). The north and east sides of the east parking area were surrounded by a single layer of railroad ties, placed by Defendant in 1999. The east parking area was wider than the 34 feet shown on the 1999 Site Plan and appeared to have room for five cars. Cars were parked along the west edge of the property in the area of the driveway; however, there was enough room between the house and the parked cars for a vehicle to drive into or out of the parking areas to the rear of the house. The single layer of railroad ties was staked into the ground when originally installed, but some of the stakes may have been removed over time when and if tenants or snow plow contractors moved the railroad ties.

On or about June 12, 2007, after a discussion with the Enforcement Officer, Defendant had the railroad ties at the northerly edge of the north parking area moved towards the south about five feet, in order to increase the distance between the north parking area and the rear lot line of the property.

On June 12, 2007, the Zoning Enforcement Officer issued the Notice of Violation

that is the subject of the appeal in Docket No. 274-12-07 Vtec, stating as the violation: "[p]remises [are] inconsistent with site plan approved on October 10, 1999." The 2007 Notice of Violation states that a site plan was attached. The 2007 Notice of Violation did not state as a violation that more than four cars were parked on the property, or that cars were parked along the driveway, and did not refer to any existing pedestrian walkway. Defendant appealed the 2007 Notice of Violation to the DRB, and appealed the DRB's decision upholding the Notice of Violation to this Court in Docket No. 274-12-07 Vtec.[8]

As of the Enforcement Officer's inspections on June 26, 2008, and July 20, 2008, Defendant had not installed the required double layer of railroad ties according to the 1999 Site Plan. The area in the northwest corner of the property formerly occupied by the 10' x 20' garage that Defendant removed was set off by railroad ties and covered with grass; no measurement was provided in evidence from either the June or the July 2008 inspection of the width of the grassed area measured from the property line. The north and east sides of the north parking area were surrounded by a single layer of railroad ties. The north parking area was wider than the twenty feet shown on the 1999 Site Plan, and appeared to have room for three cars, as shown on the photographs in evidence as City's Exhibits 11-5, 11-6, and 12-3. The north, east, and south sides of the east parking area were surrounded by a single layer of railroad ties. The east parking area appeared to have room for four cars, as shown on the photograph in evidence as City's Exhibit 12-3. Cars were parked along the west edge of the property in the area of the driveway; however, there was enough room between the house and the parked cars

---

[8] Defendant's Notice of Appeal to the DRB, dated June 13, 2007, only seeks to appeal the Enforcement Officer's "determination" that Defendant "must put up a 2.5[-foot-]high metal fence approximately 3 feet from" the house, between the traveled portion of the driveway and the house. While this may have been an oral statement by the Enforcement Officer to Defendant in the course of their discussions, it was not a requirement of the 2007 Notice of Violation.

for a vehicle to drive into or out of the parking areas to the rear of the house, as shown on the photographs in evidence as City's Exhibits 11-12, 12-1, 12-3, and 12-4. At least some of the single layer of railroad ties were staked into the ground, evidenced by the head of a stake that appears in the photograph in evidence as City's Exhibit 11-2. The photograph in evidence as City's Exhibit 11-10 shows several concrete or stone slabs located along the west side of the house partially covered by the driveway gravel; if these slabs were formerly a pedestrian walkway, such a walkway does not appear on the site plans for either the 1996 or the 1999 Zoning Permit/COA.

As of the Enforcement Officer's inspection on December 5, 2008, the width of the green space formerly occupied by the garage measured 8.5 feet in width, rather than the 10-foot dimension of the building that was removed. The north parking area measured 17 feet in depth (north-south) and 25.3 feet in width (east-west) as contrasted with the 20' x 20' dimensions shown on the approved plans. The east parking area measured 10.1 feet in depth (east-west) and 37.1 feet in length (north-south) as contrasted with the 34-foot length shown on the approved plans.

As of the Enforcement Officer's inspection on July 14, 2009, the width of the green space formerly occupied by the garage measured 8.8 feet in width, rather than the 10-foot dimension of the building that was removed. The north parking area measured 15 feet in depth (north-south) and 23.6 feet in width (east-west) as contrasted with the 20' x 20' dimensions shown on the approved plans. The east parking area measured 35.4 feet in length (north-south) as contrasted with the 34-foot length shown on the approved plans.

The attorney's fees and expenses incurred by the City regarding the present notice of violation appeal and enforcement action amounted to $10,752.65, without including the amounts expended on final preparation for trial, trial, and filing post-trial memoranda. The City did not present evidence as to the time spent on the violation by the Compliance Officer nor her hourly rate for that time. The City did not present

9

evidence as to the number of railroad ties required to construct the second layer of ties, the number of stakes required to stake them into the ground, the cost of these materials, or the cost of the labor necessary to perform the work. Without knowing the number of ties or stakes required, Defendant's evidence that he spent $44.66 to purchase three railroad ties in June of 2007 and spent $97.50 on labor to install them, does not allow the Court to determine his avoided costs for failing to install the second layer of railroad ties. To the extent that the railroad ties can be counted in the photographs, it appears that approximately eighteen railroad ties have been installed in a single line; the purchase and installation of an additional eighteen would cost approximately $853, estimated using Defendant's evidence as to his 2007 costs to install three railroad ties.

After the seven-day period to cure the violation given in the 2007 Notice of Violation, Defendant violated the site plan approved in the 1999 Zoning Permit/COA by failing to install and maintain the second layer of 6" x 6" railroad ties around the then-existing parking areas, from the northwest corner in front of the former garage, along the north and the east parking areas, to near the northeast corner of the house, and by expanding the width of the north parking area by 5.3 feet and by expanding the width of the east parking area by 3.1 feet. Standard condition 7 of the 1999 Zoning Permit/COA makes Defendant responsible for completing all of the improvements shown on the approved plan, regardless of whether he has others do the work. Standard condition 7 of the 1999 Zoning Permit/COA also makes Defendant responsible for maintaining all improvements in a satisfactory condition, regardless of whether it is his tenants, or his snow plow contractor, or others who have moved or removed any portion of those improvements.[9] The duration of the violation is 757 days, from June 19,

_____

[9] Defendant argues that the 1999 Site Plan as well as the 1999 Zoning Permit should be considered to be null and void if he did not fully comply with it, as provided in Condition 1. However, Condition 1 only refers to "this permit" and does not invalidate

10

2007 through the last inspection date about which testimony was given at trial: July 14, 2009.

On the other hand, the only violation cited in the 2007 Notice of Violation was that the subject property was "inconsistent with site plan approved on October 10, 1999." Allowing vehicles to park in the driveway, allowing vehicles to park other than in the north parking area and the east parking area, and failing to place a barrier between the driveway and the house, do not violate the site plan approved in the 1999 Zoning Permit/COA, as none of those features is shown on the 1999 Site Plan.[10] In addition, if the parking of more than four vehicles on the property is a violation of the number of vehicles stated on the 1999 Zoning Permit/COA as "existing parking"; or if the parking of vehicles owned by tenants of Defendant's neighboring properties is a violation of the zoning ordinance, neither of these violations were cited on the 2007 Notice of Violation and therefore cannot be the subject of this enforcement action. 24 V.S.A. §§ 4451–52. Defendant is, of course, free to apply for approval of any specific number and placement of parking spaces on the subject property, whether for a determination as to the "existing parking" referred to in the 1999 Zoning Permit/COA; or as a parking waiver to address the parking requirements for his adjacent properties as shared parking spaces; or under any other provision allowed under the current zoning ordinance. No such application is before the Court in the present cases.

In a zoning enforcement case, the Court assesses a daily penalty for the period during which the defendant has the benefit of the zoning violation. See 24 V.S.A.

the approved site plan. Moreover, if the permit were invalidated, Defendant would then have to address the violations stated in the 1999 Notice of Violation regarding the removal of the 10′ x 20′ garage.

[10] Moreover, the 1999 Zoning Permit/COA provided that there would be "no changes to the existing parking area" other than the removal of the garage footprint as parking. This decision does not resolve whether the "existing parking area" accommodated nine vehicles (other than in the garage footprint), as suggested by the "10" parking spaces stated as "existing" in Defendant's application for the 1996 Zoning Permit/COA.

11

§ 4451(a) (authorizing the imposition of up to $100 per violation of a zoning bylaw, and establishing that each day that such a violation continues is a separate offense); Town of Sherburne v. Carpenter, 155 Vt. 126, 133 (1990) ("As long as defendant has the benefit of the zoning ordinance violation, the statute requires that he pay a daily fine.").

The Court calculates a penalty "to remove the economic benefit and any avoided costs achieved by the defendant from the violation, as well as to compensate the enforcement entity generally for the legitimate costs of bringing the enforcement action." Town of Calais v. Noordsij, No. 142-6-06 Vtec, slip op. at 7 (Vt. Envtl. Ct. Aug. 29, 2008) (Wright, J.) (citing City of St. Albans v. Hayford, 2008 VT 36, ¶¶ 15–18, 183 Vt. 596). The Court may also consider the factors enumerated in the state environmental enforcement statute. See 10 V.S.A. §§ 8010(b), (c)(2); In re Jewell, 169 Vt. 604, 606–07 (1999) (stating that the "court has discretion . . . not only to balance [a defendant's] continuing violation against its compliance costs but also to consider such factors as those specified in [10 V.S.A. §§ 8010(b) and (c)(2)]"). These factors include deterrence, the duration of the violation, and mitigating circumstances, including unreasonable delay by the enforcement authority in seeking enforcement. 10 V.S.A. §§ 8010(b)(2), (6), & (8).

In the present case, the appropriate penalty must recognize that the Court has found in favor of Defendant on issues regarding the number of vehicles, parking in the driveway, and placing a barrier between the driveway and the house, which were the primary issues pursued by the City in this litigation. The penalty must also recognize the long delay of eight years between the issuance of the 1999 Zoning Permit/COA and the 2007 inspection and Notice of Violation. For both reasons, it is not appropriate for the City to be reimbursed for its entire expenditures on this enforcement action. Rather, it will achieve deterrence and compliance regarding the violation of the 1999 Site Plan as stated in the Notice of Violation, to require Defendant to move the installed layer and install the second layer of railroad ties in compliance with the 1999 Site Plan, and to

12

impose a penalty (in addition to the costs of conducting that work) of $3.00 per day for the 757 days of violation, for a total of $2,271.

Accordingly, based on the foregoing, it is hereby ORDERED and ADJUDGED that Defendant violated the 1999 Zoning Permit/COA and its approved site plan by failing to install and maintain a double layer of 6″ x 6″ railroad ties, pinned into the ground, around the then-existing parking areas, and by expanding the width of the north parking area by 5.3 feet and the width of the east parking area by 3.1 feet, compared to those areas as shown on the approved plan. As soon as weather conditions allow, Defendant shall move the installed layer and install the second layer of railroad ties in compliance with widths of both parking areas as shown on the 1999 site plan. In addition, Defendant shall pay a penalty of $3.00 per day for the 757 days of violation, for a total of $2,271.

Done at Berlin, Vermont, this 15th day of January, 2010.

_____
Merideth Wright
Environmental Judge